816 F.2d 679
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Alice FISH, Plaintiff-Appellant,
v.
CHARTER TOWNSHIP OF SHELBY; The Board of Trustees of the
Charter Township of Shelby; Robert Bernard; Lois McAlpine;
Stanley Stover; Robert Adams; D. Michael Barnes; Mary
Holmes; and Ronald Horton, Defendants-Appellees.
 No. 86-1516.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1987.
 
 Before ENGEL, KRUPANSKY and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This litigation involves claims by plaintiff, Alice Fish, that she was discharged from her employment with Shelby Township for political reasons and in contravention of her first amendment rights. Elrod v. Burns, 427 U.S. 347 (1976). After her discharge, Fish appealed to the Shelby Township Civil Service Commission which upheld her discharge. She then sought a writ of superintending control from the Macomb County Circuit Court which was denied.
 
 
 2
 Fish appealed to the Michigan Court of Appeals which also upheld her discharge and denied relief. Fish then filed an action under 42 U.S.C. Sec. 1983 in federal district court. After the completion of discovery, the defendants moved for summary judgment. The defendants contended in their motion that the plaintiff's claim was barred by the applicable statute of limitations and by principles of collateral estoppel. The district court granted summary judgment to the defendants. Because we agree with the district court that plaintiff was collaterally estopped from asserting her first amendment claims, we affirm on the basis of Judge Harvey's opinion with some minimal elaboration.[1]
 
 I.
 
 3
 We accept the summary of facts as set forth by the Michigan Court of Appeals in its opinion in this case:
 
 
 4
 On October 19, 1976, plaintiff was hired by the defendant Charter Township of Shelby as a recreational maintenance bus driver under a federally funded program. When the federally funded program was terminated in September, 1980, defendant's board of trustees voted to permit plaintiff to remain in her position as a temporary employee. On October 7, 1980, plaintiff received a "provisional appointment", which provided for a 90-day extension at the same rate of pay. Two weeks thereafter, defendant's board of trustees classified plaintiff's provisional appointment as that of a recreational/maintenance bus driver, grade 17-5, at a $16,360 salary.
 
 
 5
 On January 5, 1981, the township's civil service commission posted a notice regarding the availability of the civil service position of a Parks and Recreation Department "Senior Citizens Activities Co-Ordinator/Bus Driver", grade 15, with a salary range of $13,018 to $15,333. Three individuals, including plaintiff, applied for the position and were placed on an eligibility list, with plaintiff at the top of the list.
 
 
 6
 On January 15, 1981, defendant's personnel director, Warren Bailey, recommended to defendant's board of trustees that plaintiff be appointed to assume the newly created position, but, because there were questions concerning the classification of the position, the board, on January 20, 1981, elected to postpone rendering a decision thereon. In fact, the board never did select the plaintiff or the two other members on the eligibility list to fill the position. Under the terms of the 1980 provisional appointment as a recreational/maintenance bus driver, plaintiff continued to perform her duties.
 
 
 7
 Thereafter, the board requested that the township civil service commission create a different position in the Department of Parks and Recreation. A civil service examination was given for the new position of recreational/maintenance program assistant on October 30, 1981; plaintiff, who did not participate in the examination, asserts on appeal, and defendant does not dispute, that the new position did not entail bus driving services.
 
 
 8
 On November 30, 1981, plaintiff was notified that her provisional position would terminate at the end of the year because of the unavailability of additional federal funds. During the last board meeting of 1981, the position of senior citizens activities coordinator/bus driver was formally abolished.
 
 
 9
 Fish v. General Employees' Civil Service Commission For Shelby Township, 125 Mich.App. 417, 419-20, 336 N.W.2d 484 (1983).
 
 II.
 
 10
 On appeal, plaintiff does not challenge that a federal Sec. 1983 action may be barred by prior state litigation and that in appropriate circumstances principles of res judicata and collateral estoppel apply. Allen v. McCurry, 449 U.S. 90 (1980). Plaintiff contends, however, that "[t]he concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Id. at 95.
 
 
 11
 Plaintiff's argument is predicated upon the fact that her claim before the Civil Service Commission as well as in her appeals before the Michigan courts was two-fold. Plaintiff claims that her primary complaint involved procedural irregularities in Civil Service proceedings and that the discrimination claim was not fully developed.[2] We disagree. There is no doubt that plaintiff did argue under a number of theories that she should have been considered an employee with full-time Civil Service status and not a temporary or provisional employee. However, the entire scenario surrounding her discharge was permeated from the outset with allegations that she was "being unlawfully and illegally discriminated against by certain members of the Board of Trustees, specifically Mary Holmes who has endeavored to 'get rid of' [her] because of partisan considerations." (Fish petition before Civil Service Commission, Appellee's Brief Addendum No. 2).[3]
 
 
 12
 Although it is true that the circuit court based its opinion primarily on finding substantial evidence to support the Board's decision and did not specifically address the discrimination issue, the Michigan Court of Appeals did.
 
 
 13
 We have also considered plaintiff's claim that defendant's abolition of the senior citizens activities coordinator/bus driver position was a subterfuge for replacing her with an appointee more politically acceptable to certain newly elected board members. While the trial court did not address this issue, the record at the civil service commission hearing contains, at most, allegations through the affidavit of Warren Bailey, the township supervisor, that one of the board members, Mary Holmes, had political motivations to terminate plaintiff's employment. These allegations were refuted in part by the unsworn testimony of Bailey's administrative assistant, Willa Taylor, and remarks made in response to the charges by Mary Holmes. Accordingly, based on the record below, this claim is without merit.
 
 
 14
 125 Mich.App. at 425-26 (footnote omitted).
 
 
 15
 This issue was presented to the Michigan courts in a manner that made it apparent that it was not a make-weight or throwaway issue but was central to plaintiff's claims. For example, in addition to plaintiff's own subjective evaluation of why she was discharged, she had the objective fact of the change in the composition of the Board as well as the active support of the personnel director for her claims of partisanship. Under such circumstances she is collaterally estopped from reasserting this claim. Allen, 449 U.S. 90; United States v. Utah Construction and Mining Co., 384 U.S. 394 (1966).
 
 
 16
 Plaintiff also alleges on appeal that there may be some question as to whether the Civil Service Board hearing passes due process muster.[4] Upon a review of the rules and regulations of the Civil Service Commission, the applicable statutes, and the record of the actual hearing, we are convinced that the proceeding provided the process that is mandated. "[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." Kremer v. Chemical Construction Corp., 456 U.S. 461, 481 (1982).
 
 
 17
 Although plaintiff had evidentiary support for her allegations of political termination, the record also discloses that the reason her position was terminated was due to the discontinuance of outside funding. Having had a fair state hearing to resolve these conflicting contentions, plaintiff is now barred from reasserting them in federal proceedings.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The district court agreed with some but not all of defendants' contentions relating to the statute of limitations issue. Since we find that the collateral estoppel issue disposes of this appeal, it is unnecessary to review the statute of limitations issue
 
 
 [2]
 Plaintiff's political discharge claim stems from the fact that during the relevant time period the Shelby Board of Trustees changed from a board comprised of Democrats to one made up of Republicans. Since plaintiff was a working Democrat, she alleges that political considerations and the animus of one trustee in particular were her downfall
 
 
 [3]
 Similarly, in plaintiff's petition for superintending control filed with the Macomb County Circuit Court, she alleged that "[a]t least one member of the Respondent Board of Trustees, Mary Holmes, had actively worked to 'get rid of' petitioner and had attempted to have her 'terminated' by the 'Personnel Director' because she had campaigned against Kirby and Mary Holmes." (Petition for Superintending Control, Appellees' Brief, Addendum No. 3)
 
 
 [4]
 No due process violations are alleged in plaintiff's district court complaint or in the final pretrial order